**This order is SIGNED.**


**Dated: January 9, 2020**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 17-28451 |
| JON ROBERTSON and SHAUNA ROBERTSON, | Chapter 7 |
| Debtors. | Hon. Kevin R. Anderson |
| ARMA YATES, L.L.C., *et al.*, | |
| Plaintiffs, | Adversary Proceeding No. 18-02059 |
| v. | |
| JON ROBERTSON and SHAUNA ROBERTSON, | |
| Defendants. | |

### MEMORANDUM DECISION DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 31)

The matter before the Court is the Plaintiffs' Motion for Summary Judgment.[1] The

Debtors/Defendants, Jon and Shauna Robertson, filed a voluntary Chapter 7 petition on September

---

[1] ECF No. 31.

27, 2017. On May 3, 2018 the Plaintiffs ("Arma Yates" or "Plaintiffs")[2] filed a complaint objecting

to the Debtors' discharge under 11 U.S.C. § 727(a)(2)(A); § 727(a)(2)(B); § 727(a)(3);

§ 727(a)(4); and § 727(a)(5).[3]

Arma Yates filed a motion for summary judgment on August 23, 2019.[4] The Court held a

hearing on the motion on October 22, 2019. Douglas J. Payne and Leighton Aiken appeared on

behalf of Arma Yates. Brian W. Steffensen appeared on behalf of the Debtors. The Court heard

oral argument from counsel before taking the matter under advisement. Having carefully

considered the parties' oral and written arguments, the relevant pleadings and attached exhibits,

and having conducted its own independent research of the relevant case law, the Court issues the

following memorandum decision.[5]

## I.      JURISDICTION AND VENUE

The Court's jurisdiction over this adversary proceeding is properly invoked under 28

U.S.C. § 1334(b) and § 157(a) and (b)(2). The Plaintiffs' complaint seeks to deny the Debtors'

discharge, making this a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is properly laid

in this District under 28 U.S.C. § 1409, and notice of the hearing on all the motion was properly

given in all respects.

---

[2] Plaintiffs Arma Yates, L.L.C.; Florence Heights Associates, LLC; Hutchinson Kansas, L.L.C.; Kansas Five Property, L.L.C.; Minnesota Associates, L.L.C.; Ogden Associates, L.L.C.; Peabody Associates Two, L.L.C.; Sedgwick Properties, L.L.C.; and Wellington Subleasehold, L.L.C. are collectively referred to as "Arma Yates" or "Plaintiffs."

[3] All subsequent references to the United States Code are to Title 11 unless otherwise specified.

[4] ECF No. 31.

[5] This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

## II.   PRELIMINARY PROCEDURAL MATTERS

### A.   Pleadings Considered by the Court.

At the start of the hearing on October 22, 2019, the Court made several rulings regarding preliminary procedural matters. Specifically, the Debtors filed numerous documents in opposition to Plaintiffs' motion for summary judgment.[6] The Court ruled that it would only consider the Debtors' ECF No. 42 ("Declaration of Jon Robertson in Support of the Robertsons' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment – Errata No. 2") and the exhibits attached to ECF No. 44 ("The Robertsons' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment – Errata"). The Court specifically declined to consider the Debtors' "brief history of the business and personal affairs and assets of the Robertsons" on page 2 of ECF No. 44, and the "Addition [sic] Facts in Dispute" on page 64 of ECF No. 44. These sections do not comply with Utah Bankr. L. R. 7056-1(d)(2)(C), which requires that a statement of additional material facts "relevant to show that an element has not been met or that there is a genuine issue for trial" must be stated "separately in an individually numbered paragraph that cites with particularity the evidence in the record supporting each factual assertion."

At the hearing, the Court also requested that Plaintiffs file an additional exhibit that would identify the assets they allege the Debtors transferred but failed to keep recorded information, along with the estimated value of such assets.[7] The Plaintiffs filed this supplemental exhibit on October 24, 2019.[8] The Court permitted the Debtors to respond to the supplemental exhibit no

---

[6] ECF Nos. 37, 38, 39, 40, 42, 44, 45, and 46.

[7] ECF No. 48.

[8] ECF No. 49, Exhibit A.

later than November 6, 2019.[9] On November 12, 2019, Debtors filed what appears to be a mere copy of Plaintiffs' supplemental exhibit filed on October 24, 2019.[10] It is unclear whether this was meant to be a response to Plaintiffs' supplemental exhibit, but because the document was untimely and because it is a duplicate of a previously-filed pleading, the Court declines to consider it.[11]

B.      **Rulings on Admissibility of Exhibits**

In their opposition to summary judgment,[12] the Debtors objected to all of the exhibits attached to Plaintiffs' motion for summary judgment.[13] At the hearing, the Court heard oral argument and made findings of fact and conclusions of law on Debtors' objections to admissibility of Plaintiffs' exhibits for purposes of the motion for summary judgment.[14] To the extent the Court did not address an exhibit on the record, the Court makes the following rulings regarding admissibility for purposes of this matter. The Court's rulings are summarized below:

1.      Plaintiffs' Exhibits (ECF No. 31)

| | |
|---|---|
| Exhibit A: Transcript of March 1, 2018 Hearing Before the U.S. District Court for the Northern District of Illinois Eastern Division | Admitted. |
| Exhibit B: Entities Structure Chart | Admitted. |
| Exhibit C: Default Notice dated June 20, 2014 | Not admitted. |

---

[9] ECF No. 48. Counsel for the Debtors filed a document with the Court on November 12, 2019, but the image is a copy of the Plaintiff's Supplement. ECF No. 52. Regardless, any response to Plaintiffs' supplemental exhibit filed after November 6, 2019 is untimely pursuant to the Court's order at ECF No. 48.

[10] ECF No. 52.

[11] ECF No. 52.

[12] ECF No. 44.

[13] ECF No. 31, Exhibits A-N.

[14] The Court noted on the record that the rulings on admission of the Plaintiffs' exhibits are limited to consideration of the Plaintiffs' Motion for Summary Judgment. Thus, the Court's rulings on admissibility are made without prejudice should the matter proceed to trial.

| | |
|---|---|
| Exhibit D: Verified Complaint dated July 7, 2015 | Not admitted. |
| Exhibit E: Notice of Removal of Illinois state court action to Illinois federal court, dated August 14, 2015 | Debtors do not dispute that they participated in the removal of the action to federal court, so Exhibit E is admitted for that purpose. |
| Exhibit F: Deposition of Jon Robertson dated July 26, 2016 | Admitted. |
| Exhibit G: Final Judgment dated December 16, 2016 issued by the U.S. District Court for the Northern District of Illinois Eastern Division | Admitted. |
| Exhibit H: Defendant Jon Robertson's Statement of Compliance with Court's Order Requiring Responses to Petitioners' Citation Requests | Admitted. |
| Exhibit I: Request for Net Worth Statement Financial Records for April 30, 2015 | Admitted. |
| Exhibit J: Amended Judgment in a Criminal Case (Making and Subscribing a False Tax Return) dated August 15, 2015 | Debtors have not challenged the authenticity of this judgment, and Jon Robertson testified about it at a hearing before the Illinois Federal District Court on 3/1/18.[15] Therefore, Exhibit J is admitted, but the Court gives it limited weight at this time because the Court is not making any findings of credibility in ruling on the motion for summary judgment. |
| Exhibit K: Statement of Financial Affairs and Schedules dated October 18, 2017 | Admitted. |
| Exhibit L: Amended Statement of Financial Affairs dated May 2, 2018 | Admitted. |
| Exhibit M: Complaint for Quiet Title dated March 29, 2018 | Admitted. |

---

[15] ECF No. 31, Exhibit A at 7.

| Exhibit N: Memorandum Opinion and Order Issued by the U.S. District Court for the Northern District of Illinois Eastern Division dated May 14, 2018 | Admitted. |
|---|---|

The Court also considered the exhibits attached to the Debtors' memorandum in opposition (ECF No. 44). Although the Plaintiffs did not lodge objections to admissibility of the Debtors' exhibits for purposes of the motion for summary judgment, the Court will summarize for clarity which exhibits are admitted and which were not admitted:

2.   Debtors' Exhibits (ECF No. 44)

| Exhibit 1 | Withdrawn. |
|---|---|
| Exhibit 2: Plaintiffs' Subpoena to Barry Engels for Trust Documents | Not admitted. The exhibit is not attached to ECF No. 44. |
| Exhibit 3: Receipt from Court Reporter of Documents Produced by Barry Engels to the Plaintiffs | Not admitted. The exhibit is not attached to ECF No. 44. |
| Exhibit 4: Plaintiffs' Initial Disclosures | Admitted. |
| Exhibit 5: The Robertsons' Amended Bankruptcy Schedules and Statements filed May 2, 2018. | Admitted. |
| Exhibit 6: Trust Documents Relating to Distribution of Assets to the Esther Johnson Family Partnership | Admitted. |
| Exhibit 7 | Withdrawn. |
| Exhibit 8: Document Directing Barry Engels to Put the $15,000 into the Partnership | Admitted. |

## III.    UNDISPUTED FACTS

The Debtors lodged objections to or denied all of Plaintiffs' undisputed facts.[16] The Court has considered the Debtors' responses and finds the following facts to be undisputed.

### The Esther Johnson Trust and the Illinois Litigation

1.      In approximately 2002, the Debtors' estate planning attorney created the Esther Johnson Trust (the "Trust"), with the Debtors as its beneficiaries.[17]

2.      The Debtors transferred to the Trust various assets, including their ownership interests in entities involved in their nursing home operations. In a prior court hearing, Mr. Robertson authenticated an organizational chart depicting the Trust as the controlling entity over at least 12 other companies.[18]

3.      On July 7, 2015, Arma Yates filed a civil action in the Circuit Court Cook County, Illinois against the Debtors and other defendants.[19]

4.      On August 14, 2015, the defendants removed the Illinois state court action to the U.S. District Court for the Northern District of Illinois (No. 1:15-cv-7171) (the "Illinois Federal Court" and the "Illinois Federal Court Action").[20]

---

[16] ECF No. 44.

[17] It is unclear when the Trust was created, but the Resolution of the Esther Johnson Trust (ECF No. 44, Exhibit 6) names the "Esther Johnson Trust dated May 21, 2002."

[18] ECF No. 31, Ex. B. The Debtors object to referring to the Trust as a "holding company." A "holding company" is defined as "a company formed to control other companies, usu. confining its role to owning stock and supervising management. It does not participate in making day-to-day business decisions in those companies." BLACK'S LAW DICTIONARY (11th ed. 2019). However, Jon Robertson testified before the Illinois federal district court that he recognized the organizational chart depicting the Trust as the controlling entity over at least 12 other companies. *Arma Yates, LLC v. Arma Care Center, LLC*, 2018 WL 2193141, 2018 U.S. Dist. LEXIS 80347 (N.D. Ill. May 14, 2018) (noting "Robertson's testimony authenticating organization chart appearing to show that the Trust was a holding company for the defaulted Debtors.").

[19] ECF No. 31, Exhibit E. Arma Yates, L.L.C., et al. v. Arma Care Center, LLC, Case No. 2015-L-006902.

[20] ECF No. 31, Exhibit E.

5.    On May 30, 2016, which was during the pendency of the Illinois Federal Court Action, the Robertsons proceeded to dissolve the Trust.[21]

6.    Jon Robertson would later testify before the Illinois Federal Court that:

(a) the Debtors were the settlors, trust protectors, and beneficiaries of the Trust;

(b) the Trust made no distributions until its dissolution in mid-2016; and

(c) the assets distributed by the trustee of the Trust were received by the Esther Johnson Family Partners, which was neither a settlor, trust protector, nor beneficiary of the Trust.[22]

7.    On December 16, 2016, the Illinois Federal Court entered a final judgment in favor of Plaintiffs and against Debtors in the principal amount of $37,618,296.81.[23]

8.    On or about May 6, 2017, Jon Robertson submitted to the Illinois Federal Court a document captioned "Defendant Jon Robertson's Statement of Compliance with Court's Order Requiring Responses to Petitioners' Citation Requests" (the "Statement of Compliance").[24] Attached to the Statement of Compliance is a description of Trust assets distributed to and ultimately sold by the Debtors to various pawn shops commencing on May 1, 2014.[25]

**The Bankruptcy Filing and the Pre-Petition Sale of Jewelry**

9.    On September 27, 2017, the Debtors, represented by Eric C. Singleton, filed their Chapter 7 petition.

---

[21] ECF No. 31, Exhibit A, Transcript of Show Cause Hearing at 60-62.

[22] ECF No. 31, Exhibit A, Transcript of Show Cause Hearing at 8-9 and 63.

[23] ECF No. 31, Exhibit G.

[24] ECF No. 31, Exhibit H.

[25] ECF No. 31, Exhibit H at 104-07.

10.     On January 5, 2018, the Court revoked Mr. Singleton's ECF filing privileges as a sanction for contempt of court and for failing to properly represent his clients.[26] This effectively precluded Mr. Singleton from representing clients before the Bankruptcy Court for the District of Utah.[27] On April 4, 2018, Brian W. Steffensen filed his notice of appearance as counsel for the Debtors.[28]

11.     The Statement of Compliance dated May 6, 2017 (which is 4.5 months before the petition date) discloses, *inter alia*, the Debtors' sale of the following items: (a) a charm bracelet sold in September 2016 to a New York pawn shop for $2,500 (the "Charm Bracelet"); (b) a diamond ring sold in September 2016 to a New York pawn shop for $18,000 (the "Diamond Ring"); and (c) a men's platinum diamond ring sold November 2016 to a Salt Lake City pawn shop for $8,000 (the "Platinum Diamond Ring").[29]

12.     The Debtors assert that they sold the Charm Bracelet and Diamond Ring on Labor Day, September 5, 2016, which is more than a year prior to their bankruptcy filing.

13.     There is no dispute that the Debtors sold the  Platinum Diamond Ring in November 2016, which is within one year of the bankruptcy filing.

14.      The Debtors filed their original bankruptcy schedules and Statement of Financial Affairs on October 18, 2017.[30] These papers were prepared with the assistance of their bankruptcy counsel, Mr. Singleton.

---

[26] Case No. 17-02066, ECF No. 31, "Order Finding Eric Singleton Guilty of Contempt and Imposing Sanctions."

[27] See Local Rule 5005-2.

[28] Case No. 17-28451, ECF No. 89.

[29] ECF No. 31, Exhibit H at 104-05.

[30] ECF No. 31, Exhibit K, Statement of Financial Affairs filed Oct. 18, 2017.

15.     In response to Question No. 18 on their original Statement of Financial Affairs, which requires debtors to list transfers made within two years of their bankruptcy filing (other than ordinary course transfers), the Debtors only listed the sale of the  Platinum Diamond Ring for $8,000 in November 2016. The Debtors did not list the sale of the Charm Bracelet or the Diamond Ring.[31]

16.     In their amended Statement of Financial Affairs filed on May 2, 2018, with the assistance of Mr. Steffensen, the Debtors modified their response to Question No. 18 to state that the "Esther Johnson Family Partnership owned and sold the property shown an Exhibit A hereto" and that the "proceeds were given to Debtors and used for expenses."[32] The Exhibit A states that it is a list of the "personal property owned by the Trust as of May 19, 2016." The list contains photos of jewelry items, but it is unclear if the photos correspond to the Charm Bracelet and/or the Diamond Ring sold by the Debtors.

17.     With respect to the remaining Trust assets, Debtor Jon Robertson stated that "[b]y the end of 2016, there were no more assets available to me to sell."[33]

**The Post-Petition Litigation Regarding Real Property**

18.     On their original Schedule A/B, at line 33, the Debtors checked the "No" box as to whether they had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment."[34]

---

[31] *Id.*

[32] ECF No. 44, Exhibit 5, Attachment #2.

[33] ECF No. 42, Declaration of Jon Robertson at ¶ 31(d).

[34] ECF No. 31, Exhibit K, Statement of Financial Affairs filed Oct. 18, 2017.

19.     On their original Schedule A/B, Part 1, the Debtors identified their residence at 4571 E. Sugar Pine Dr., Oakley, Utah, but listed it as being owned by the Trust (the "Sugar Pine Home").[35] On Schedule D, the Debtors listed that they were the obligors on the note secured by the Sugar Pine Home.[36]

20.     On October 3, 2017, the creditor asserting a trust deed lien on the Sugar Pine Home filed a motion for relief from stay.[37] On January 26, 2018, the Court granted the creditor's motion for relief from stay.[38]

21.     The Debtors allege that on March 29, 2018, the Trust quitclaimed the Sugar Pine Home to them.[39]

22.     On March 29, 2018, some six months after their bankruptcy filing, debtor Shauna Robertson, through bankruptcy counsel Brian W. Steffensen, filed a Complaint in Third District Court for Summit County styled *Robertson v. Bates, et al.*, Civil No. 180500142, involving the Sugar Pine Home (the "Post-Petition Litigation").[40]

23.     The Post-Petition Litigation seeks actual and punitive damages against the mortgage creditor and its agents; to declare as void the mortgage creditor's trust deed against the Sugar Pine Home; and to quiet title to the Sugar Pine Home in the Debtors' names.[41]

24.     In the amended Schedule A/B filed on May 2, 2018, the Debtors listed only "(a) possible claim against Arma Yates and Fabian VanCott – wrongful execution;" and "(b) against

[35] *Id*.
[36] *Id*.
[37] ECF No. 6.
[38] ECF No. 55.
[39] ECF No. 31, Exhibit M Complaint for Quiet Title at ¶ 13.
[40] ECF No. 31, Exhibit M, Complaint for Quiet Title.
[41] *Id*.

IRS for overpayment."[42] The Debtors never otherwise amended their bankruptcy schedules to disclose the Post-Petition Litigation.

### The Debtors' Testimony Before the Illinois Federal Court

25.     On March 1, 2018, the Debtors testified at a hearing before the Illinois Federal Court regarding the Statement of Compliance that listed certain assets as being transferred within two years of the bankruptcy filing.[43]

26.     On May 14, 2018, the Illinois Federal Court issued a Memorandum Opinion and Order finding that Arma Yates had "set forth significant evidence that Robertson has committed perjury and/or bankruptcy fraud."[44]

27.     Specifically, the Illinois Federal Court set forth certain discrepancies in Jon Robertson's testimony, including: (a) whether the Debtors contributed cash to the Trust; (b) a failure to list in their bankruptcy papers items of artwork, jewelry, and furniture the Debtor's listed in their May 8, 2016 letter to the Illinois Federal Court; (c) whose idea it was to establish the Trust; (d) whose idea it was to dissolve the Trust; and (e) whether the Trust has ever been a holding company of the defaulted nursing home businesses.[45]

28.     In this same Memorandum Opinion and Order, the Illinois Federal Court also referred its findings to the United States Attorneys' office for the District of Utah for consideration as to the prosecution of crimes for perjury and bankruptcy fraud or "any other offense the United States Attorney deems appropriate."[46]

---

[42] ECF No. 44, Exhibit 5, amended Schedule A/B filed 5/2/18.

[43] ECF No. 31, Exhibit A, Transcript of Show Cause Hearing at 22-29.

[44] ECF No. 31, Exhibit N, Memorandum Opinion at 8.

[45] *Id*. at 8-9.

[46] *Id*.

29.    At present, there is no evidence that the United States Attorney has taken any action

on the criminal referral made by the Illinois Federal Court.

## IV.    DISCUSSION

### A.    Summary Judgment Standard.

Under Fed. R. Civ. P. 56(a), as incorporated into bankruptcy proceedings by Fed. R. Bankr.

P. 7056, the Court is required to "grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Substantive law determines which facts are material and which are not. "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment."[47] Whether a dispute is "genuine" turns on whether "the evidence is such

that a reasonable [fact finder] could return a verdict for the nonmoving party."[48] In sum, the Court's

function at the summary judgment stage is to "determine whether there is a genuine issue for

trial."[49]

The moving party bears the burden to show that it is entitled to summary judgment,[50]

including the burden to properly support its summary judgment motion as required by Rule 56(c).[51]

If the moving party has failed to meet its burden, "summary judgment must be denied," and the

nonmoving party need not respond because "no defense to an insufficient showing is required."[52]

Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to

---

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[48] *Id.*

[49] *Id.* at 249.

[50] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[51] *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).

[52] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (citation omitted)

demonstrate a genuine issue for trial on a material matter."[53] The nonmoving party may not rely

solely on allegations in the pleadings, but must instead designate "specific facts showing that there

is a genuine issue for trial."[54]

When considering a motion for summary judgment, the Court views the record in the light

most favorable to the non-moving party,[55] but the Court does not weigh the evidence or make

credibility determinations.[56]

**B.     Plaintiffs' Causes of Action Under § 727(a).**

1.      Section 727(a)(2)(A) – Transfer of Property Within One Year of the
        Bankruptcy Filing

Section 727(a)(2)(A) provides:

(a) The Court shall grant the debtor a discharge, unless – (2) the debtor, with intent
to hinder, delay, or defraud a creditor or an officer of the estate charged with
custody of property under this title, has transferred, removed, destroyed, mutilated,
or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or
concealed – (A) property of the debtor, within one year before the date of the filing
of the petition . . . .

"To deny a discharge under § 727(a)(2), a court must find actual intent to defraud

creditors."[57] "Because rare is the occasion when a party lays bare his or her subjective intent,

'[f]raudulent intent . . . may be established by circumstantial evidence, or by inferences drawn

from a course of conduct.'"[58] However, "the granting or denial of a discharge must normally await

the outcome of the trial . . . . The fact-intensive nature of many discharge objections relating to

---

[53] *Concrete Works of Colorado, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

[54] *Celotex*, 477 U.S. at 324.

[55] *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279 (10th Cir. 2013) (citation omitted).

[56] *Nat'l Am. Ins. Co. v. Am. Re–Insurance Co.*, 358 F.3d 736, 742–43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).

[57] *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (quoting *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991)).

[58] *Id.* (quoting *Farmers Coop. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)).

fraudulent intent and similar issues does not make them amenable to disposition through summary judgment."[59]

The Plaintiffs' allege that the Debtors sold the Charm Bracelet, the Diamond Ring, and the Platinum Diamond Ring within one year of their bankruptcy filing with the requisite fraudulent intent. The Debtors filed their bankruptcy case on September 27, 2017. The Debtors contend that the Charm Bracelet and Diamond Ring were sold on Labor Day, September 5, 2016, which is more than one year before their bankruptcy filing. However, the Debtors have not produced documentation to establish the date of this sale. Thus, the transfer date of the Charm Bracelet and the Diamond Ring remains disputed. However, the Debtors admit that the  Platinum Diamond Ring was sold in November 2016, which is within one year of the bankruptcy filing.

The next issue is whether the Debtors transferred these items with the actual intent to hinder, delay or defraud creditors. The Plaintiffs contend that the timing of the dissolution of the Trust along with the transfer of its assets during the pendency of the Illinois Federal Court Action is sufficient, circumstantial evidence to establish the Debtors' mal-intent. The Debtors respond that they sold the assets at issue to pay for living expenses and legal fees during a time when Mr. Robertson had no income. [60] Thus, they did not act with an intent to defraud creditors.

While the timing of the transfers relative to the Illinois Federal Court action could constitute a badge of fraud,[61] the Debtors seek to rebut this suggestion of fraudulent intent by

---

[59] *Ormsby v. Keeley*, No. 15-06010, 2016 WL 3963373, 2016 Bankr. LEXIS 2624 (Bankr. D. Kan. July 18, 2016) (citing 6 Collier on Bankruptcy ¶ 727.16[7] at 727-74 (Alan Resnick & Henry J. Sommer eds.-in-chief, 16th ed.)).

[60] ECF No. 42, Declaration of Jon Robertson at ¶ 76 ("Shauna and I only sold items of personal property . . . out of desperation and to obtain funds to pay living expenses and attorneys fees.  We definitely were not trying to defraud, hinder or delay any creditor. We were trying to stay alive.").

[61] *See United States Trustee v. Garland (In re Garland)*, 417 B.R. 805, 815 (10th Cir. B.A.P. 2009) (discussing the ten badges of fraud to find the requisite fraudulent intent under § 727, including the timing of the transferred assets and their monetary value); *see also Compton v. Herrman (In re Herrman)*, 355 B.R. 287 (Bankr. D. Kan. 2006) (court

arguing that their difficult financial circumstances and the need to pay living expenses is what motivated their sale of the assets. At the summary judgment stage, the Court cannot appropriately assess the Debtors' credibility with respect to these factual assertions in order to rule on the probity of their intent. Thus, the Court denies the Plaintiff's Motion for Summary Judgment under § 727(a)(2)(A).

2.    Section 727(a)(2)(B) – Post-Petition Concealment of Property of the Estate.

Section § 727(a)(2)(B) involves a debtor's post-petition concealment of property of the estate with fraudulent intent. The Plaintiffs contend that the Debtors' failure to list the Post-Petition Litigation in their bankruptcy schedules, which sought money damages and the invalidation of the trust deed lien on the Sugar Pine Home, constitutes a fraudulent, post-petition concealment of property of the estate. The Debtors argue that the Post-Petition Litigation is not property of the bankruptcy estate, and therefore they were not required to list it in their bankruptcy papers. In support thereof, the Debtors allege that their bankruptcy counsel, Mr. Steffensen, advised them that since the damages asserted in the Post-Petition Litigation arose after the bankruptcy filing, the causes of action were not property of their bankruptcy estate.[62] The Debtors further argue that they disclosed the Post-Petition Litigation to the bankruptcy trustee at an examination under Fed. R. Bankr. P. 2004.[63] Thus, the Debtors argue that they did not have an intent to conceal the Post-Petition Litigation[64] and that they acted in good faith when they disclosed it to the trustee.

---

could not find fraudulent intent when debtor sold a truck for $15,000 and used proceeds to pay for reasonable living expenses).

[62] ECF No. 42, Declaration of Jon Robertson at ¶ 87; *see also* § 541 (property of a Chapter 7 estate is generally determined as of the petition date).

[63] *Id.*

[64] See *Rupp v. Biorge (In re Biorge)*, 536 B.R. 24, 30 (Bankr. D. Utah 2015) ("At its heart, the advice of counsel defense is not so much an affirmative defense as it is a way for a debtor to negate the element of intent.").

Whether the Post-Petition Litigation is property of the estate is a legal determination that will require additional evidence and legal argument not presently before the Court.[65] Likewise, the Court needs additional evidence before ruling on the Debtors' state of mind as to why they did not list the Post-Petition Litigation in their bankruptcy papers and the veracity of their disclosure to the trustee.[66] Thus, the Court cannot find on the undisputed facts set forth herein that the Post-Petition Litigation was an asset of the estate that should have been included on the bankruptcy schedules, or that the Debtors intended to conceal the Post-Petition Litigation in an effort to hinder, delay, or defraud creditors. Thus, the Court denies the Plaintiff's Motion for Summary Judgment under § 727(a)(2)(B).

3.   Section 727(a)(3) – Absence of Financial Records.

Section 727(a)(3) provides that the court shall grant the debtor a discharge unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." The statute's purpose "is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs."[67] It further "ensures that trustees and creditors will receive sufficient information to enable them to trace the debtor's

---

[65] *In re Bardales*, 609 B.R. 260 (Bankr. D. Idaho Nov. 27, 2019) (In determining whether a settlement payment was considered property of the estate under § 541, "the Court must also consider whether Debtors had a legal interest in property in the form of an accrued legal cause of action as of the petition date."); *In re Purcell*, 573 B.R. 859 (Bankr. D. Kan. 2017) (*Butner* answers *what* is property under state law, while *Segal* determines whether that interest *existed* before the debtor filed his bankruptcy petition.) (emphasis in original).

[66] For example, this assertion could possibly be verified through an admissible transcript of the trustee's Rule 2004 examination.

[67]  *Hunt v. Steffensen (In re Steffensen)*, 534 B.R. 180, 196 (Bankr. D. Utah 2015) (quoting *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999)).

financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions."[68] "[T]he focus of § 727(a)(3) is on the chapter 7 trustee and the creditors having access to recorded information that allows the trustee to administer the case and the creditors to protect their rights in the bankruptcy case."[69] "[A] party objecting to discharge need show only that it cannot ascertain the debtor's financial condition and recent business transactions *from the records provided*. It is not necessary to show that there is no conceivable way to ascertain the financial condition of the debtor."[70]

The determination under § 727(a)(3) is two-part. First, the creditor has the burden to establish that the debtor "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his financial condition and *material business* transactions."[71] Once the creditor meets its burden, it shifts to the debtor to explain or justify the failure to maintain records.[72] "Records are adequate if they 'sufficiently identify the transactions that intelligent inquiry can be made respecting them.'"[73] A debtor "may have every right . . . to decline to keep books reflecting his business transactions; if he chooses to do so he seriously jeopardizes his ability to seek shelter under Chapter 7 of the Code."[74]

---

[68] *Id.*

[69] *Charles F. McVay v. Phouminh (In re Phouminh)*, 339 B.R. 231, 241 (Bankr. D. Colo. 2005).

[70] *Hunt v. Steffensen*, 534 B.R. 180 (Bankr. D. Utah 2015) (emphasis in original) (quoting *Jacobowitz v. Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 438 (S.D.N.Y. 2004)); *see also PNC Bank, Nat'l Ass'n v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 97 (Bankr. W.D. Pa. 2000) (noting that Congress did not intend for creditors to expend "an infinite amount of time, money, and effort in organizing, reconstructing, and/or independently investigating a debtor's affairs").

[71] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997).

[72] *Id.*

[73] *Martinez v. Sears (In re Sears)*, 557 B.R. 193, 199 (Bankr. D. Colo. 2016) (quoting *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 615 (10th Cir. B.A.P. 2001)).

[74] *Jacobowitz v. Cadle Co.*, 309 B.R. 429, 439 (S.D.N.Y. 2004).

The Plaintiffs contend that the Debtors' absence of records regarding their dispositions of assets from the Trust constitutes cause to grant summary judgment under § 727(a)(3). Specifically, the Plaintiffs contend that the Debtors have produced no written records for any of the transactions listed in the Plaintiffs' Supplemental Exhibit A.[75] The Debtors deny this by contending that a receiver and the Debtors' estate planning attorney produced personal and Trust documents to Plaintiffs.[76] In his declaration, Jon Robertson asserts that his Statement of Compliance filed in the Illinois Federal Court "was (and still is) my very best recollection of when I sold items and how much those sales realized."[77]

While the Debtors do not specifically identify the documents they produced to the Plaintiffs, the Court finds that this disputed issue should be addressed at trial where the Court can consider additional exhibits (if any) and assess the parties' credibility. Therefore, the Court denies summary judgment under § 727(a)(3).

> 4.    Section 727(a)(4)(A) – False Oath in Connection with a Bankruptcy Case.

Section 727(a)(4)(A) provides that the court shall grant the debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." To prevail on such a cause of action, "a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact."[78] Because the statute requires actual intent, "[m]ere mistake or inadvertence" will not result in the discharge being denied under § 727(a)(4).[79]

---

[75] ECF No. 49.

[76] ECF No. 42, Declaration of Jon Robertson at ¶¶ 42-48.

[77] *Id*. at ¶ 37.

[78] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997).

[79] *Id*. at 1294-95.

The Plaintiffs contend that the Debtors' discharge should be denied under § 727(a)(4) because they did not fully disclose all of their property in their bankruptcy case until after they were examined as to their assets in the Illinois Federal Court action. These include assets listed in the Statement of Compliance as being transferred within two years of the bankruptcy filing, but that were not disclosed in the Debtor's bankruptcy papers. The Plaintiffs also cite to the Debtors' failure to list the Post-Petition Litigation on their amended bankruptcy schedules.

Again, the Court cannot grant the Plaintiffs summary judgment under § 727(a)(4) because there are genuine issues of material fact as to the Debtors' intent. The Debtors admit that their original bankruptcy papers contained mistakes but that the "mistakes in preparing and submitting the initial schedules and statements" were the fault of their original bankruptcy counsel.[80] Upon discovering the mistakes made by their prior counsel, the Debtors state that they filed the amended statements and schedules to rectify any errors.[81]

In the context of summary judgment, the Court cannot rule on the credibility of the Debtors' explanation regarding problems with their former counsel, which precludes the Court from granting summary judgment under § 727(a)(4). And as previously stated, the Court is likewise precluded from granting summary judgment as to the omission of the Post-Petition Litigation from the bankruptcy papers where the Debtors have raised a genuine issue of material fact as to whether they acted knowingly and fraudulently.

5.    Section 727(a)(5) – Failure to Explain the Loss of Assets

Section 727(a)(5) provides that the court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this

---

[80] ECF No. 42, Declaration of Jon Robertson at ¶ 56.

[81] *Id*. at ¶ 61.

paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." To deny

discharge under § 727(a)(5) the Plaintiff must prove "facts establishing that a loss or shrinkage of

assets actually occurred."[82] Once a loss is proven, "the burden then shifts to the debtor to explain

the loss or deficiency of assets in a satisfactory manner."[83] The Tenth Circuit has held that "Section

727(a)(5) requires a satisfactory explanation which must consist of more than vague, indefinite

and uncorroborated assertions by the debtor."[84]

Section 727(a)(5) does not require intent, and thus "it is unnecessary for the party objecting

to discharge to prove or even allege fraudulent acts or a corrupt motive on the part of the debtor."[85]

"A prima facie case under Section 727(a)(5) has been held to exist where a creditor shows that . .

. there was an unusual and unexplained disappearance of assets shortly before the debtor filed

bankruptcy."[86]

The Plaintiffs assert that "absent documentation of the purported dissolution of the Trust

and/or conveyance of Debtors' assets commencing in 2014, the only reasonable conclusions" are

that either the Trust was never dissolved or the assets from the Trust are still in the Debtors'

possession.[87] In response, the Debtors' assert that their estate planning attorney produced Trust

documents to the Plaintiffs, that the Trust was dissolved in May 2016, and that "[b]y the end of

2016, there were no more assets available to me to sell."[88] The Debtors also contend that they used

---

[82] *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 618 (10th Cir. B.A.P. 2001).

[83] *Id.*

[84] *Cobra Well Testers, LLC v. Carlson (In re Carlson)*, No. 06-8158, 2008 WL 8677441, at *5, 2008 U.S. App. LEXIS 1521 (10th Cir. Jan. 23, 2008) (citing *Damon v. Chadwick (In re Chadwick)*, 335 B.R. 694, 703 (W.D. Wis. 2005)).

[85] *In re Phouminh*, 339 B.R. 231, 247 (Bankr. D. Colo. 2005).

[86] *In re Carlson*, 2008 WL 8677441, at * 5, 2008 U.S. App. LEXIS 1521, at *14 (10th Cir. 2008) (quoting *Shappell's Inc. v. Perry (In re Perry)*, 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000)).

[87] ECF No. 31, Plaintiffs' Motion for Summary Judgment at ¶ 29.

[88] ECF No. 42, Declaration of John Robertson at ¶ 31.

the funds from the sale of assets for living expenses and legal fees related to the Illinois Federal Court action. Because of these disputed facts, the parties should establish their allegations and defenses with evidence and testimony elicited at trial.

## V.     CONCLUSION

For the foregoing reasons, the Court denies the Plaintiffs' Motion for Summary Judgment.[89] The Court finds that genuine issues of material fact are present which precludes granting the Plaintiffs' Motion for Summary Judgment. However, pursuant to Fed. R. Civ. P. 56(g), the undisputed facts set forth herein are deemed established for trial unless modified by a subsequent order of the Court. The Court will enter an order consistent with this Memorandum Decision.

---------------------------------END OF DOCUMENT-----------------------------------

---

[89] ECF No. 31.



## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **MEMORANDUM DECISION DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 31)** will be effected to the parties and in the manner designated below:

**By Electronic Service:**

- Douglas J. Payne dpayne@fabianvancott.com, mdewitt@fabianvancott.com
- Brian W. Steffensen brianwsteffensen@gmail.com, brianwsteffensen@gmail.com


**By U.S. Mail:**

Leighton Aiken
Ferguson Braswell Fraser Kubasta PC
2500 Dallas Parkway
Suite 600
Plano, TX 75093