**This order is SIGNED.**

**Dated: February 17, 2022**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number: 17-28451 |
| JON ROBERTSON and SHAUNA ROBERTSON, | Chapter 7 |
| Debtors. | |
| ARMA YATES, L.L.C., *et al*. | Adversary Proceeding No. 18-02059 |
| Plaintiffs, | Hon. Kevin R. Anderson |
| vs. | |
| JON ROBERTSON, | |
| Defendant. | |
| MEMORANDUM DECISION | |

Prior to a experiencing a number of personal and financial misfortunes, the Debtor's business entities operated a national network of nursing homes. The entities leased the nursing homes from Plaintiffs, and the Debtor personally guarantied the leases. The Debtor's entities defaulted on the leases, and Plaintiffs sued the Debtor under the guaranties. Plaintiffs ultimately

obtained a judgment against the Debtor in excess of $37 million. Plaintiffs vigorously pursued collection of the judgment that precipitated the Debtors filing for Chapter 7 bankruptcy relief. Plaintiffs then filed this complaint under 11 U.S.C. § 727[1] seeking a denial of Debtor's discharge based on allegations of omissions in the bankruptcy papers and a failure to keep records or explain the pre-petition disposition of assets. For the reasons set forth below, the Court finds that Plaintiffs have not established by a preponderance of evidence that the Debtor's discharge should be denied.

## I.      JURISDICTION AND VENUE

The Court's jurisdiction over this adversary proceeding is properly invoked under 28 U.S.C. § 1334(b) and § 157(a) and (b)(2).[2] This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (I) because the complaint objects to the discharge of debt. Venue is appropriately laid in this District under 28 U.S.C. § 1409.

## II.     PROCEDURAL BACKGROUND

On September 27, 2017, Jon and Shauna Robertson (the "Debtors") filed a voluntary Chapter 7 bankruptcy petition.[3] On May 3, 2018, Plaintiffs[4] filed this complaint against the Debtors seeking a denial of discharge under §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), and 727(a)(5).

The Court dismissed Shauna Robertson[5] as a defendant in the adversary proceeding pursuant to a settlement approved on June 2, 2021.[6] The Court conducted a trial on November 17-

---

[1] All subsequent references to the United States Code are to Title 11 unless otherwise specified.

[2] The parties affirmatively consented to entry of a final judgment or order by the Bankruptcy Court in the Pretrial Order. ECF No. 85.

[3] Case No. 17-28451.

[4] Plaintiffs Arma Yates, LLC; Florence Heights Associates, LLC; Hutchinson Kansas, LLC; Kansas Five Property, L.L.C.; Minnesota Associates, LLC; Ogden Associates, LLC; Peabody Associates Two, LLC; Sedgwick Properties, LLC; and Wellington Subleasehold, LLC are herein collectively referred to as "Plaintiffs."

[5] During this adversary proceeding, Shauna changed her name from Shauna Robertson to Shauna Grow.

[6] ECF No. 97.

18, 2021. Douglas J. Payne and Leighton Aiken appeared for the Plaintiffs. Stephen K. Christiansen, Joshua B. Cutler, and Ryan R. Bolander appeared for Jon Robertson. At the conclusion of the trial on November 18, 2021, the Court took the matter under advisement.

Having carefully considered the parties' oral and written arguments, the evidence and testimony elicited at trial, and having conducted its own independent research of the relevant caselaw, the Court issues the following Memorandum Decision.[7]

## III.   FACTS

The findings of fact constitute the Court's findings based on the material, uncontroverted facts set forth in the Pretrial Order[8] and the testimony and exhibits admitted at trial.

### A.   Background Facts Regarding Deseret Health Group, the Esther Johnson Trust, and the Debtor's Criminal Tax Conviction.

1.      Jon Robertson (the "Debtor") was involved in the operation of a national network of nursing homes (the "Deseret Health Group"). The Debtor served as the founder and CEO of the Deseret Health Group from 2006 through 2008, and he was Chairman of the Board from 2008 through 2013.[9]

2.      Affiliates of Deseret Health Group leased nursing homes from Plaintiffs pursuant to several master leases dated from 2008 to 2012.[10] The Debtor personally guarantied the leases.[11]

---

[7] This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any of the conclusions of law herein are similarly deemed to be findings of fact, and they shall be equally binding as both.

[8] ECF No. 85.

[9] November 17, 2021 Trial Transcript ("Trial Tr.") 10:8-10:24.

[10] Pls' Exs. 12, 13A-F.

[11] Pls' Exs. 14A, 14B.

3.       In approximately 2002, the Debtors' estate planning attorney created the Esther Johnson Trust (the "Trust"), with the Debtors as its beneficiaries.[12]

4.       The Debtors transferred various assets to the Trust, including their interests in the entities operating the nursing homes. In a prior court proceeding, the Debtor authenticated an organizational chart depicting the Trust as the controlling entity over at least 12 other companies including Deseret Health Group.[13]

4.       In 2014, the Debtor pleaded guilty to "making and subscribing a false [tax] return,"[14] and he was ordered to pay $150,000 in restitution to the IRS.[15] The IRS also subsequently collected large sums from the Debtors in unpaid taxes.[16]

5.       In August 2014, the Debtor was incarcerated in federal prison on a one-year sentence.[17] The incarceration lasted "a little more than five months,"[18] and the Debtor was released in March 2015.[19]

**B.       The Debtors' Financial Difficulties**

6.       As a result of the Debtor's criminal conviction, he was removed from the management of Deseret Health Group,[20] and the offices of Deseret Health Group were foreclosed in 2015.[21]

---

[12] ECF No. 85, Pretrial Order ¶4(a).

[13] ECF No. 85, Pretrial Order ¶4(b); Pls' Ex. 16.

[14] Pls' Ex. 1; ECF No. 112, Trial Tr. 9:18-9:21.

[15] Pls' Ex. 1, PL-000005.

[16] ECF No. 112, Trial Tr. 42:11-42:14.

[17] Pls' Ex. 1, PL-000002.

[18] ECF No. 112, Trial Tr. 43:10-43:11.

[19] Trial Tr. 45:22-45:24.

[20] Trial Tr. 43:12-43:21.

[21] Trial Tr. 14:14-14:18.

7.      The Health and Human Services Department ("HHS") and Office of Inspector General investigated the Debtor's nursing home businesses. In 2015 or 2016 the Debtor entered into a settlement agreement with the federal government regarding potential claims against his nursing home businesses. As part of the settlement, the Debtor agreed to a 30-year ban from working in the health care industry in the United States.[22]

8.      The Debtor asserts that he paid attorney fees and costs of "over $3,000,000" as a result of his legal issues.[23]

9.      Because of his ban from the health care industry and his status as a convicted felon, the Debtor's only source of income for a time was as an Uber driver.[24]

10.     The Debtor also experienced extensive medical issues. These include contracting meningitis and encephalitis in 2011; a fractured hip and back from a car accident in 2012; bone fractures from a ladder fall in 2015; prostate cancer in 2016; and then sepsis from a surgery.[25] The Debtor testified that these medical issues further impeded his ability to work.[26]

11.     As a result of these financial setbacks, the Debtors began in 2014 to sell items of personal property to pay living and legal expenses.[27]

12.     The Debtor is now divorced from co-debtor Shauna Grow, and he is living in a friend's spare room.[28]

---

[22] Trial Tr. 47:22-48:20; Trial Tr. 14:9-14:13.
[23] Trial Tr. 44:5-44:7.
[24] Trial Tr. 46:2-46:7.
[25] Trial Tr. 44:14-45:19.
[26] Trial Tr. 45:20-45:24.
[27] Trial Tr. 49:7-49:21.
[28] Trial Tr. 46:5-46:7.

### C.    Plaintiffs' Pre-Petition Lawsuit Against Debtor

13.    On July 7, 2015, Plaintiffs filed a civil action in the Circuit Court Cook County, Illinois, against the Debtors and other defendants.[29] In August 2015 the action was subsequently removed to the United States District Court for the Northern District of Illinois (the "Illinois Federal Court").[30]

14.    Plaintiffs' complaint sought a judgment against the Debtor under his guaranties of the leases and promissory notes. The guaranties provided that "Guarantors shall not sell, lease, transfer, convey or assign any of their assets if such action would have an adverse effect on any Guarantors' business or financial condition or otherwise adversely affect the performance of its obligations under this Guaranty."[31]

15.    On December 16, 2016, the Illinois Federal Court entered a judgment in favor of Plaintiffs and against the Debtors, jointly and severally, in the principal amount of $37,618,296.81 (the "Judgment").[32]

16.    On May 6, 2017, the Debtor submitted to the Illinois Federal Court a document captioned "Defendant Jon Robertson's Statement of Compliance with Court's Order Requiring Responses to Petitioners' Citation Requests."[33] Attached to the Statement of Compliance is the Debtors' "Response to Creditor's Requests for Production,"[34] and the Debtors' response for "Turnover and/or Accounting of Assets."[35] Attached to this accounting of assets is "Exhibit D,"

---

[29] ECF No. 85, Pretrial Order ¶4(c).

[30] *Id*. at ¶4(d).

[31] Pls' Ex. 14-A, ¶3.4(a).

[32] Pls' Ex. 33; ECF No. 85, Pretrial Order ¶4(g).

[33] Pls' Ex. 17.

[34] Pls' Ex. 17-A.

[35] Pls' Ex. 17-B.

which is a description of Trust assets "distributed to and ultimately sold by the Debtors to various

pawn shops commencing on May 1, 2014" (the "List of Sold Assets").[36]

17.    The List of Sold Assets dated May 1, 2017 (which is 4.5 months before the petition

date) discloses the date, place, buyer, and sale's price of the items of personal property sold by the

Debtors between 2014 and 2016, including the following:

(a) a charm bracelet sold in September 2016 to a New York pawn shop for $2,500

(the "Charm Bracelet");

(b) a diamond ring sold in September 2016 to a New York pawn shop for $18,000

(the "Diamond Ring"); and

(c) a men's Platinum Diamond Ring sold November 2016 to a Salt Lake City pawn

shop for $8,000 (the "Platinum Ring").[37]

18.    The Debtors sold the Charm Bracelet and Diamond Ring on Labor Day weekend

in 2016 (September 3-5), which is more than a year before the filing of their present bankruptcy

case.[38]

19.    The Debtors sold the Platinum Ring in November 2016, which is within one year

of the bankruptcy filing.[39]

20.    The Debtors received $20,000 for their personal property included in the sale of

their Bountiful, Utah residence. But all of these proceeds went to the IRS in partial satisfaction of

tax liens.[40]

---

[36] ECF No. 85, Pretrial Order ¶4(h); Pls' Ex. 17-B at PL-000733-38.

[37] *Id.*

[38] Trial Tr. 102:11-102:22; Case No. 17-28451, ECF No. 1.

[39] ECF No. 85, Pretrial Order ¶4(l).

[40] Pls' Ex. 17-B, Ex. D (Note 2).

21.     The Debtors sold their remaining items of personal property to pawn shops, art galleries, or buyers through classified ads.[41] The Debtor testified that he does not have records of these sales because they were cash transactions, and he did not receive a receipt. Or if he did receive receipts, he no longer has them or other documents because the sales occurred one to three years before the bankruptcy filing.[42]

22.     In connection with Plaintiffs' "Citation to Discover Assets," the Illinois Federal Court declined to hold the Debtor in civil contempt because "it didn't hear anything today from Robertson that they have records [regarding their financial situation] they have failed to produce."[43]

23.     With the exception of sale proceeds paid to the IRS, the Debtors used the money from the sale of the personal property to pay living expenses and attorney fees.[44]

**D.     The Debtors' Bankruptcy Filings**

24.     The Debtors filed a Chapter 7 case on August 17, 2017 (Case No. 17-27193), which was one day before a show-cause hearing in the Illinois Federal Court.[45]

25.     The Debtors' bankruptcy counsel, Eric Singleton ("Attorney Singleton"), failed to file several required bankruptcy papers,[46] and the Court dismissed the bankruptcy case on September 20, 2017.[47]

---

[41] *Id*. See also Trial Tr. 56-57.
[42] Trial Tr. 56:14-58:3; 97:21-99:23.
[43] *See* Debtor's Ex. G at Robertson 00259.
[44] Trial Tr: 49:10-49:21.
[45] Case No. 17-27193, ECF No. 1; Debtor's Ex. J at p. 2-3.
[46] Case No. 17-27193, ECF No. 4 (Deficiency Notice); Trial Tr. 58:23-60:4.
[47] Case No. 17-27193, ECF No. 14.

26.     After the dismissal of the first bankruptcy case, the Illinois Federal Court rescheduled the show-cause hearing for September 28, 2017.[48]

27.     On September 27, 2017, the Debtors filed a second Chapter 7 case, again being represented by Attorney Singleton.[49]

28.     On October 18, 2017, Attorney Singleton filed the Debtors' bankruptcy papers, including the Statement of Financial Affairs and Bankruptcy Schedules (the "Original SOFA").[50]

29.     In response to Question No. 18, the Original SOFA only listed the sale of the Platinum Ring for $8,000 in November 2016. It did not disclose the sale of the Charm Bracelet or the Diamond Ring on Labor Day weekend, 2016.[51]

30.     The Debtor testified that he provided Attorney Singleton with all of his records, including the Statement of Compliance documents, which is how the sale of the Platinum Ring came to be listed in the Original SOFA.[52]

31.     On January 2, 2018, Attorney Singleton filed a motion to continue the first meeting of creditors due to multiple health issues.[53]

32.     On January 4, 2018, Chief Judge Marker, in Adversary Proceeding No. 17-02066, entered a sanction order against Attorney Singleton based on his "failure to properly represent his clients in this case and others."[54] Attorney Singleton represented that he had

---

[48] *Arma Yates, LLC v. Arma Care Center, LLC*, No. 15 C 7171, 2018 WL 2193141, at *1 (N.D. Ill. May 14, 2018) ("The evidentiary hearing was subsequently postponed; first by the Debtor's request for a continuance (R. 157) and then by the Debtors' bankruptcy filings (R. 159; R. 163).").

[49] Case No. 17-28451 (hereinafter referred to as the "Main Case").

[50] Main Case ECF No. 20; Pls' Exs. 31 & 34.

[51] Main Case ECF No. 20 at p. 66; Pls' Ex. 31 at PL-001227.

[52] Trial Tr. 23:1-5.

[53] Main Case ECF No. 43.

[54] Adv. Pro. No. 17-02066, ECF No. 31; Debtor's Ex. M.

"cardiovascular issues, pulmonary issues, and psychological complications" that were exacerbated by his medications and treatments.[55] On January 9, 2018, Judge Marker entered an amended order clarifying that Attorney Singleton's ECF Filer Privileges were revoked, which precluded him from appearing in any matter in the Utah Bankruptcy Court.[56]

33.    On March 15, 2018, attorney Brian Steffensen ("Attorney Steffensen") appeared as substitute counsel for the Debtors at their first meeting of creditors. Attorney Steffensen later entered his formal appearance as Debtors' counsel in both the bankruptcy case and this adversary proceeding.[57]

34.    On May 2, 2018, Attorney Steffensen filed an amended Statement of Financial Affairs (the "Amended SOFA"). The Amended SOFA modified the response to Question No. 18 to state that the "Esther Johnson Family Partnership owned and sold the property shown on Exhibit A hereto" and that the "proceeds were given to Robertsons and used for expenses."[58] The referenced Exhibit A[59] is a copy of documents provided to Plaintiffs in the Statement of Compliance in the Illinois Federal Court. Exhibit A includes the Debtor's letter dated May 8, 2017, that references the List of Sold Assets,[60] but that list was not included with the Amended SOFA.

## E.    The Sugar Pine Home

35.    On the original Schedule A/B, Part 1, the Debtors listed their residence at 4571 E. Sugar Pine Dr., Oakley, Utah (the "Sugar Pine Home")[61] with the following notation:

---

[55] Adv. Pro. No. 17-02066, ECF No. 17.
[56] Adv. Pro. No. 17-02066, ECF No. 36.
[57] Main Case ECF No. 89.
[58] Main Case ECF No. 95 at p. 6; Pls' Ex. 35 at PL-001340.
[59] Pls' Ex. 35 starting at PL-001344.
[60] *Id.* at PL-001370.
[61] Pls' Ex. 34 at p. 3.

"Property owned by Esther Johnson Family Company II. Debtor's interest in Esther Johnson

Family Company II was turned over to Plaintiffs. Case No. 15-7171 on May 8, 2017."[62]

36.     The Debtors directly, or indirectly through the Trust, held an interest in the Sugar

Pine Home since at least 2006.[63] The Sugar Pine Home was subject to a 2006 note and trust deed

in favor of the Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for

Mortgageit, Inc.[64]

37.     In June 2017, MERS assigned the trust deed to US Bank as trustee for an

investment tranche.[65] At this same time, US Bank filed a notice of default on the Sugar Pine

Home.[66]

38.     The Debtor's bankruptcy filings in August and then in September 2017 stayed

any action to foreclose the Sugar Pine Home.[67]

39.     On October 3, 2017, US Bank filed a motion for relief from stay as to the Sugar

Pine Home.[68] The Trustee initially objected to the motion and requested time to review whether

the Sugar Pine Home was of value to the estate, but he later withdrew the objection.[69] In January

2018, the Court granted the motion for relief from stay.[70]

40.     The Debtors' first meeting of creditors did not occur until March 15, 2018

(almost six months after the bankruptcy filing) due to continuations resulting from the Debtor's

health issues, then Attorney Singleton's health issues and his subsequent lock-out from the Utah

---

[62] Pls' Ex. 34 at p. 3.
[63] Pls' Ex. 39.
[64] Pls' Ex. 41.
[65] Pls' Ex. 43.
[66] Pls' Ex. 44.
[67] Case Nos. 17-27193; 17-28451.
[68] Main Case ECF No. 6.
[69] Main Case ECF No. 25 (objection); Docket Text Entry Dated 01/16/2018 (withdrawal).
[70] Main Case ECF No. 55.

Bankruptcy Court.[71] At the meeting of creditors, Attorney Steffensen appeared as Debtors'
bankruptcy counsel.[72]

41.     At the meeting, the Trustee asked about the Sugar Pine Home, and the Debtors
responded that it was in foreclosure.[73] The Trustee did not ask further questions about the Sugar
Pine Home.

42.     On March 28, 2018, US Bank foreclosed on the Sugar Pine Home, which
removed it as an asset of the bankruptcy estate.[74]

43.     On March 29, 2018, Attorney Steffensen filed a state court complaint for quiet
title and damages arising from the foreclosure of the Sugar Pine Home (the "Quiet Title
Action").[75] The gravamen of the complaint was the allegation that US Bank did not have
possession of the "wet ink signed" note; thus, it did not have standing to foreclose on the Sugar
Pine Home.[76] However, Attorney Steffensen never served the complaint, and on October 17,
2018, the state court dismissed the Quiet Title Action for lack of prosecution.[77]

44.     The Amended SOFA filed on May 2, 2018, disclosed that the Sugar Pine Home
had been foreclosed.[78]

---

[71] Main Case ECF Nos. 37; 38; 63.

[72] Pls' Ex. 47 (341 Transcript - 03/15/2018); Main Case ECF No. 89.

[73] Pls' Ex. 47 at PL-00484-85.

[74] Pls' Ex. 36 at PL-001428; Trial Tr. 104:3-7.

[75] Main Case ECF No. 85 at ¶4(r); Pls' Ex. 36. *See also* § 541 (property of a Chapter 7 estate is generally determined as of the petition date).

[76] Pls' Ex. 36. *See, e.g.*, *Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 402 P.3d 130, 135 (Utah Ct. App. 2017) (establishing under Utah law that only the party in possession of the original note is entitled to enforce it). *See also In re Miller v. Deutsche Bank Nat'l Trust Co.*, 666 F.3d 1255, 1263-64. (10th Cir. 2012) (holding that standing to seek relief from the bankruptcy stay requires that the mortgage creditor have possession of the original, signed note).

[77] Pls' Ex. 37 at PL-001443-44.

[78] Pls' Ex. 35 at PL-001373.

### F.     The Adversary Proceeding

45.     On March 22, 2018, Plaintiffs filed a proof of claim for $46,975,528.54 based on the Judgment with accrued interest and costs (the "Claim").[79]

46.     On May 3, 2018, Plaintiffs filed this adversary proceeding seeking a denial of the Debtors' discharge under §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5).[80]

47.     On August 23, 2019, Plaintiffs filed a motion for summary judgment.[81] The Debtors opposed the motion, and on January 9, 2020, the Court entered and order and memorandum decision denying the Plaintiffs' motion.[82]

48.     On December 20, 2016, the Utah State Bar entered its order prohibiting Attorney Steffensen from practicing law.[83] After many appeals, the Utah Supreme Court entered its ruling on January 7, 2021, affirming Attorney Steffensen's disbarment.[84] This decision was entered just before the trial date set in this proceeding, resulting in additional delay as the Debtor had to retain new counsel.

49.     Attorney Singleton subsequently pleaded guilty to criminal bankruptcy fraud and was sentenced to a year in prison.[85]

---

[79] Proof of Claim No. 11, Case No. 17-28451.

[80] Adv. Pro. No. 18-02059.

[81] ECF No. 31.

[82] ECF No. 53 & 54.

[83] *In the Matter of the Discipline of Brian Steffensen, #3092*, Civil No. 110917794, Findings of Fact, Conclusions of Law and Order of Disbarment (J. Shaughnessy Dec. 20, 2016).

[84] *Steffensen v. Office of Prof'l Conduct*, 481 P.3d 468, 479 (Utah 2021) ("With this opinion, we bring to a close this decade-long adjudication of Steffensen's conduct, comfortable in having left no legal or factual stones unturned in reaching this ultimate resolution. We affirm the district court's order of disbarment.").

[85] Press Release, U.S. Attorney's Office, District of Utah, Utah Attorney Sentenced to Bankruptcy Fraud Scheme (Jan. 27, 2022), https://www.justice.gov/usao-ut/pr/utah-attorney-sentenced-bankruptcy-fraud-scheme.

# I.   ANALYSIS

## A.   Introduction.

Plaintiffs seek denial of the Debtor's discharge under §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5). Plaintiffs must prove the elements of § 727 by a preponderance of the evidence.[86] "Section 727 objections to a debtor's discharge are difficult to prove, and for good reason. A denial of debtor's discharge is the 'death penalty' in bankruptcy."[87] "Denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor. The provisions denying the discharge are construed liberally in favor of the debtor and strictly against the creditor."[88] As directed by the Tenth Circuit, "the reason for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural."[89]

## B.   Section 727(a)(2)(A) (Fraudulent Concealment).

Section 727(a)(2)(A) provides that a debtor shall be granted a discharge unless:

> [T]he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition . . . .

---

[86] *OTE Dev. USA, Inc. v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997)); *In re Gordon*, 526 B.R. 376, 388 (10th Cir. B.A.P. 2015).

[87] *Davis v. Baker (In re Baker)*, Nos. 19-12015, 20-5006, 2021 Bankr. LEXIS 1366, at *1, 2021 WL 2020287, at *1 (Bankr. D. Kan. May 20, 2021). *See also In re Leone*, 463 B.R. 229, 248 (Bankr. N.D.N.Y. 2011) (describing a denial of discharge as the "death penalty of bankruptcy"); *In re Wells*, 426 B.R. 579, 611 (Bankr. N.D. Tex. 2006) (declining to impose the "death penalty in bankruptcy")).

[88] *In re Mosley*, 501 B.R. 736, 742 (Bankr. D. N.M. 2013).

[89] *Jones v. Gertz*, 121 F.2d 782, 784 (10th Cir. 1941). *See also Korrub v. Cohn (In re Cohn)*, 561 B.R. 476, 492 (Bankr. N.D. Ill. 2016) ("Denial of discharge is a drastic remedy reserved only for the worst actors."); *Haupt v. Belonzi (In re Belonzi)*, 476 B.R. 899, 904 (Bankr. W.D. Pa. 2012) ("Completely denying a debtor his discharge . . . is an extreme step and should not be taken lightly.") (alteration and internal quotation marks omitted)).

"The objective of § 727(a)(2) is to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of his assets."[90] "To deny a discharge under § 727(a)(2), a court must find *actual* intent to defraud creditors."[91] "Because rare is the occasion when a party lays bare his or her subjective intent, '[f]raudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'"[92] Such circumstantial evidence is referred to as the "badges of fraud."[93] However, the Tenth Circuit has noted that "[t]he mere fact that a transaction occurred soon before the filing of bankruptcy does not necessarily support the inference of fraud."[94]

Plaintiffs allege that the Debtor sold the Charm Bracelet, Diamond Ring, and Platinum Ring (the "Jewelry") within one year of his bankruptcy filing with the requisite intent to defraud creditors. At trial, the Debtor testified that he sold the Charm Bracelet and Diamond Ring on Labor Day weekend (September 3-5) in 2016 at a pawn shop in New York. This is more than one year before the bankruptcy filing on September 27, 2017. Although no written documentation was introduced to support the date of the sale, the Court finds the Debtor's testimony on this point to be credible. His recollection of the date and location of the sales has remained consistent in both

---

[90] *In re Baker*, 2021 Bankr. LEXIS 1366, at *14 (citing *Cook v. Knight (In re Knight)*, 574 B.R. 800, 813 (Bankr. N.D. Ga. 2017)).

[91] *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (quoting *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991)).

[92] *Id.* (quoting *Farmers Coop. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)) (alteration in original).

[93] *U.S. Tr. v. Garland (In re Garland)*, 417 B.R. 805, 815 (10th Cir. B.A.P. 2009) (listing the following "badges of fraud": "(1) concealment of prebankruptcy conversions; (2) conversion of assets immediately before the filing of the bankruptcy petition; (3) gratuitous transfers of property; (4) continued use by the debtor of transferred property; (5) transfers to family members; (6) obtaining credit to purchase exempt property; (7) conversion of property after entry of a large judgment against the debtor; (8) a pattern of sharp dealing by the debtor prior to bankruptcy; (9) insolvency of the debtor resulting from the conversion of the assets; and (10) the monetary value of the assets converted.").

[94] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir. 1997) (holding that without more, it was not a badge of fraud that the debtor transferred a security interest in his car collection four days before the bankruptcy filing) (citing 6 *Collier on Bankruptcy* § 727.02(3)(a) (15th ed. rev. 1996)).

this case and the Illinois Federal Court action. In addition, the Debtor was forthright in disclosing that he sold the Platinum Ring in November 2016, which is within one year of the bankruptcy filing. Therefore, the Court finds that the Debtor's sale of the Bracelet and Diamond Ring falls outside the one-year look back period of § 727(a)(2) and therefore cannot be a basis for the denial of the Debtor's discharge.

But even if the Debtor sold all of the Jewelry within a year of the bankruptcy filing, the evidence does not establish that he did it with the intent to hinder, delay, or defraud creditors. Plaintiffs contend that the sale during the pendency of the Illinois Federal Court action is adequate circumstantial evidence to establish the Debtor's malicious intent. While the timing of the sale relative to the Illinois Federal Court action could constitute a badge of fraud, the Court is not persuaded that it was the Debtor's intent to wrongfully avoid paying Plaintiffs' judgment that motivated him to sell the Jewelry.

The Court accepts as factual the Debtor's testimony that he liquidated the Jewelry because he needed to pay living and legal expenses. Specifically, the Debtor testified about his significant legal troubles around the time of the sale, including pending actions against him and his businesses by Plaintiffs and government agencies.[95] He also testified about his serious medical issues that prevented him from earning income.[96] It follows that the Debtor sold the Jewelry out of a necessity to pay living expenses rather than to hinder, delay, or defraud Plaintiffs.[97] Because Plaintiffs did not establish by a preponderance of the evidence the Debtor's intent to hinder, delay, or defraud

---

[95] *See, e.g.*, Trial Tr. 42, 48.

[96] Trial Tr. 44-46.

[97] *In re Brown*, 108 F.3d at 1293 ("There was no evidence that the money [borrowed against the debtor's car collection just before the bankruptcy filing] was not reasonably used or that it was squandered."). *See also Compton v. Herrman (In re Herrman)*, 355 B.R. 287, 295 (Bankr. D. Kan. 2006) (court could not find fraudulent intent when in the same month as the bankruptcy filing, the debtor sold a truck for $15,000 and used the proceeds to pay for reasonable living expenses).

creditors with respect to sale of the Jewelry, the Court denies Plaintiffs' cause of action under § 727(a)(2)(A).

### C.    Section 727(a)(2)(B) (Post-Petition Concealment).

Section 727(a)(2)(B) mandates the denial of a discharge if the debtor engaged in the post-petition concealment of property of the estate with a fraudulent intent:

> The court shall grant the debtor a discharge, unless—(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(B) property of the estate, after the date of the filing of the petition . . . .

"The purpose of this section is to prevent the discharge of a debtor who attempts to avert collection of his debts by concealing or otherwise disposing of assets."[98] Concealment "simply means withholding knowledge of an asset by the failure or refusal to divulge owed information."[99] A debtor's bad intent can be established by circumstantial evidence. A single bad act may be sufficient, but a "pattern of wrongful behavior presents a stronger case."[100] "In other words, courts should consider a debtor's 'whole pattern of conduct.'"[101]

Plaintiffs contend that the Debtor's discharge should be denied under § 727(a)(2)(B) because he failed to disclose in his bankruptcy papers, with an intent to hinder, delay, or defraud creditors, the following: (1) the sale of assets within two years of the bankruptcy filing, particularly the Charm Bracelet and Diamond Ring; and (2) the cause of action for quiet title arising from the alleged wrongful foreclosure of the Sugar Pine Home.

---

[98] *Cobb v. Hadley (In re Hadley)*, 70 B.R. 51, 53 (Bankr. D. Kan. 1987).

[99] *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 156 (Bankr. N.D. Ohio 1998).

[100] *Pinnacle Agric. Distrib. v. Gamble (In re Gamble)*, Nos. 16-80193, 16-8017, 2018 Bankr. LEXIS 2231, at *26 (Bankr. E.D. Okla. July 27, 2018) (quoting *Freelife, Internat'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 916 (Bankr. D. Utah 2006)).

[101] *Id.* (quoting *E. Diversified Distr., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 672 (Bankr. N.D. Ga. 2004)).

1.     *Sale of Assets within 2 Years of the Bankruptcy Filing*

The Original SOFA did not disclose that within two years of the bankruptcy filing, the Debtor had sold the Charm Bracelet and the Diamond Ring; however, it did disclose the sale of the Platinum Ring within one year of the bankruptcy filing. Plaintiffs point to the fact that the Debtor failed in both his Original and Amended SOFA to disclose the sale of the Charm Bracelet and Diamond Ring. Plaintiffs assert that the Debtor acted with the requisite bad intent because these omissions in the Original SOFA were pointed out to him during a hearing before the Illinois Federal Court that occurred before the filing of the Amended SOFA.

The Debtor testified that he provided "every document from the Illinois case to [Attorney Singleton]," which included the List of Sold Assets. The Debtor asserts that this is evidenced by the fact that the Original SOFA disclosed the sale of the Platinum Ring in November 2016.[102] The Debtor assumed that Attorney Singleton would include in the Original SOFA the information from the List of Sold Assets, and he assumed the Original SOFA was accurate because his attorney prepared it.[103]

After Attorney Singleton's bar from practicing in the bankruptcy court, Attorney Steffensen stepped in to represent the Debtors. The Debtor testified that Attorney Singleton's wife provided Attorney Steffensen with the backup information for the Debtor's bankruptcy filing[104] and that the Debtor also provided Attorney Steffensen with the disclosure papers from the Illinois Federal Action. After the first meeting of creditors, Attorney Steffensen amended the Debtor's SOFA by, *inter alia*, attaching copies of documents from the Illinois Statement of Compliance,

---

[102] Trial Tr. 21:1-5; 58:11-22.
[103] Trial Tr. 59-61.
[104] Trial Tr. 62.

previously provided to the Plaintiffs, that included photos of the Debtors' personal property.[105]

However, while the Amended SOFA contains the Debtor's May 8, 2017 "Accounting of Assets"[106]

that references the List of Sold Assets as an exhibit, that list, with its disclosure of the sale of the

Charm Bracelet and Diamond Ring, was not included in the Amended SOFA.

In summary, the Debtor testified that he provided the List of Sold Assets to both Attorney

Singleton and Attorney Steffensen, so he cannot explain why the disclosures therein were not

included in his bankruptcy papers. In other words, his attorneys must have failed to include the

disclosures in his bankruptcy papers.

### 2. *Problems with Debtor's Bankruptcy Counsel*

In considering why the sale of the Charm Bracelet and the Diamond Ring was not listed in

the SOFA, when a few months earlier the Debtor had disclosed it to Plaintiffs in the Illinois Federal

Court, the Court must factor in that the Debtors had particularly problematic counsel preparing

their bankruptcy papers. The Debtor testified that he provided both Attorney Singleton and

Attorney Steffensen with the Statement of Compliance documents, including the List of Sold

Assets, and that he relied on them to accurately prepare the bankruptcy papers. However, both

Attorney Singleton and Attorney Steffensen were in the midst of serious legal and ethical problems

at the time they were acting as Debtor's counsel.

Specifically, at the time he was representing the Debtors, Attorney Singleton was

struggling with significant physical, mental, and criminal problems, which likely contributed to

his failure to timely file the Debtors' bankruptcy papers in their first bankruptcy case. This also

---

[105] Pls' Ex. 17-B at PL-00733.
[106] Pls' Ex. 35 at PL-001368

made it difficult for the Debtors to communicate or meet with Attorney Singleton.[107] When scrambling to file their second case, the Debtors found that Attorney Singleton's offices had been closed,[108] and they had to meet with his wife at an off-site location to sign their bankruptcy papers. And even then, she only provided them with the signature pages rather than the entire set of documents.[109] Indeed, Attorney Singleton was never able to appear with the Debtors at the first meeting of creditors, even with multiple continuances. In an unrelated bankruptcy case, and while Attorney Singleton was acting as counsel for the Debtors, Chief Judge Marker suspended Attorney Singleton from practicing in the Utah Bankruptcy Court based on "his failure to property represent his clients in this case and others." Attorney Singleton admitted that he was dealing with medical issues and treatments that resulted in "psychological complications."[110] Even more problematic was that Attorney Singleton later pleaded guilty to committing bankruptcy crimes at the same time he was representing the Debtors.[111]

Attorney Steffensen had a different set of problems. He filed his own bankruptcy case in 2015, but the trustee successfully objected to his discharge for the failure to keep records of his legal practice.[112] During the time he represented the Debtor, he was also in the midst of a ten-year disbarment action with the Utah State Bar for repeatedly failing to "maintain accounting practices that would keep his law firm viable" which ultimately resulted in his disbarment for engaging in conduct that "reflected adversely on his honesty, trustworthiness or fitness as a lawyer."[113]

---

[107] Trial Tr. 61:17-19 ("It was definitely a time with a lot of anxiety because we could never get a hold of [Attorney Singleton]. He never followed up on anything with us."); Trial Tr. 59:2-3 ("We provided everything to [Attorney Singleton], and he said he would get back to us and he was just elusive, we couldn't get a hold of him.").

[108] Trial Tr. 59:4-5.

[109] Trial Tr. 60-61.

[110] Adv. Pro. 17-02066, ECF No. 17 filed Nov. 30, 2017.

[111] *See supra* note 85.

[112] *Hunt v. Steffensen (In re Steffensen)*, 534 B.R. 180 (Bankr. D. Utah 2015).

[113] *Steffensen v. Office of Prof'l Conduct*, 481 P.3d 468, 470, 471 (Utah 2021).

The Court is usually not receptive to a debtor attributing an omission in the bankruptcy papers to negligent counsel. But in this case, the Debtor had the misfortune of being represented by two disorganized and ethically challenged attorneys. This gives veracity to the Debtor's statements that he provided the List of Sold Assets to his counsel for the purpose of fully disclosing his financial affairs, and that it must have been his lawyers who omitted that information in his bankruptcy papers.[114]

In summary, Plaintiffs did not establish by a preponderance of the evidence that the Debtor was actively concealing the pre-petition sale of these items from the Trustee or creditors with an intent to hinder, delay, or defraud. In contrast, the facts establish that in the Illinois Federal Court action, the Debtor made extensive disclosures to Plaintiffs in the Statement of Compliance, including the List of Sold Assets that related the sale of the Charm Bracelet and Diamond Ring. The Debtor also provided these documents to his bankruptcy counsel and to the Trustee. The Debtor's multiple disclosures in the List of Sold Assets is inconsistent with an intent to conceal. And their omission from the Original and Amended SOFA was more likely due to the error of the Debtor's problematic bankruptcy counsel. While the Debtor should have caught the omission in his bankruptcy papers, that alone is not sufficient to establish a wrongful intent to conceal under § 727(a)(2)(B). Therefore, the Court finds that Plaintiffs have not proven the elements of § 727(a)(2)(B) as to the nondisclosure of the Charm Bracelet and Diamond Ring in the Debtor's bankruptcy papers.

---

[114] *See, e.g., Morse v. George (In re George)*, 370 B.R. 4, 9 (Bankr. D. Mass. 2007) (finding that the attorney's conduct in the case evidenced carelessness, and it would be unfair to attribute that carelessness to the debtor).

3.      *The Sugar Pine Home*

Plaintiffs argue the Debtor concealed the Quiet Title Action on the Sugar Pine Home by not listing it in his Original or Amended SOFA. They further argue that the Debtor's fraudulent intent is established by the fact that the Debtor filed the Quiet Title Action after the foreclosure sale in March 2018.

The Debtor testified that he was not aware of this cause of action until it was suggested to him by Attorney Steffensen around the time of the foreclosure sale in March 2018.[115] Given that Attorney Steffensen began representing the Debtor in March 2018, that non-lawyers are not commonly aware of the "wet signature" cause of action, and in the absence of evidence to the contrary, the Court finds the Debtor's testimony on this point to be credible.

In addition, Attorney Steffensen took the position that the Debtors were not damaged until US Bank foreclosed without first establishing possession of the "wet ink signed" note. Thus, he reasoned, the Quiet Title Action was a post-petition claim, meaning it was not an asset of the Chapter 7 estate under § 541.[116] The Court finds this to be a reasonable and legally supportable analysis by Attorney Steffensen. While not making a conclusion of law as to whether the Quiet Title Action was or was not property of the estate, the Court finds at a minimum that Attorney Steffensen had a good faith belief that the Quiet Title Action arose post-petition, and therefore it was not an asset of the Chapter 7 bankruptcy estate. Thus, the Debtor did not conceal the Quiet Title Action with fraudulent intent because he did not know about it until Attorney Steffensen communicated this legal opinion to him in March 2019.[117]

---

[115] Trial Tr. 68:18-69:4.

[116] Trial Tr. 69:8-70:12. *See also* ECF No. 37, Debtor's Response to Motion for Summary Judgment, at 48.

[117] *See Rupp v. Biorge (In re Biorge)*, 536 B.R. 24, 30 (Bankr. D. Utah 2015) ("At its heart, the advice of counsel defense is not so much an affirmative defense as it is a way for a debtor to negate the element of intent.").

The Debtor further testified that in off-the-record discussions during the Rule 2004 exam, the Trustee and Attorney Steffensen conversed about the Quiet Title Action.[118] The transcript from the Debtor's Rule 2004 examination does not include specific discussions regarding the Quiet Title Action. However, Trustee's counsel asked questions regarding the Sugar Pine Home, and the Debtor's responses do not evidence an intent to conceal anything about its status.[119] Indeed, the Trustee's attorney acknowledged: "We're very much aware of [the foreclosure of the Sugar Pine Home]. We were part of the [relief from stay] proceedings on that initially."[120] Further, Attorney Steffensen explained at the Rule 2004 exam that he added to the schedules a possible counterclaim against the IRS because "when I realized this was a counterclaim — I thought clearly that's an asset of bankruptcy . . . and it needs to be disclosed."[121] While not dispositive, this statement supports the Debtor's assertions that he and Attorney Steffensen made full disclosures to the Trustee. Indeed, at the end of the Rule 2004 exam, Trustee's counsel indicated that the Trustee "is not inclined to pursue nondischargeability on our end," indicating the Trustee's acceptance of the Debtor's disclosures.[122]

Thus, the Debtor argues that he did not have an intent to conceal the Quiet Title Action, that it was a post-petition asset that did not need to be listed in the bankruptcy papers, and that he acted in good faith by nonetheless disclosing it to the Trustee. The Tenth Circuit has held that "no inference of fraudulent intent can be drawn from an omission when *the debtor promptly* brings it to the court's or trustee's attention *absent other evidence of fraud*."[123] It perhaps could have been

---

[118] Trial Tr. 68:18-69:4.
[119] Pls' Ex. 48 at PL-001592.
[120] Pls' Ex. 48 at PL-001592.
[121] Pls' Ex. 49 at PL-001638.
[122] Pls' Ex. 49 at PL-001686.
[123] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997).

conclusively established whether the Trustee knew of the Quiet Title Action, but Plaintiffs did not

call the Trustee or Attorney Steffensen as witnesses. Thus, the Debtor's testimony is the only

evidence of off-the-record discussions at the Rule 2004 examination regarding the Quiet Title

Action. And the Court finds that, standing alone, to be sufficiently credible. Finally, based on

Attorney Steffensen's decision to not prosecute the Quiet Title Action and the Trustee's ostensible

lack of interest in the matter, the Court concludes that the Quiet Title Action was not a viable cause

of action that could have benefited creditors.

In summary, based on the presented evidence, the Court cannot find under § 727(a)(2)(B)

that it is more likely than not that the Debtor concealed the Quiet Title Action with the intent to

defraud.

### D.      Section 727(a)(3) (Failure to Maintain and Preserve Records).

Under § 727(a)(3), the court shall grant a discharge unless "the debtor has concealed,

destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

books, documents, records, and papers, from which the debtor's financial condition or business

transactions might be ascertained, *unless such act or failure to act was justified under all of the*

*circumstances of the case*."[124] The statute's purpose "is to make the privilege of discharge

dependent on a true presentation of the debtor's financial affairs."[125] The Tenth Circuit has

articulated the elements of § 727(a)(3):

> A prima facie case under § 727(a)(3) requires a showing that a debtor failed to
> maintain and preserve adequate records and that the failure made it *impossible* to
> ascertain his or her financial condition and *material* business transactions. If a

---

[124] Section 727(a)(3) (emphasis added).

[125] *Hunt v. Steffensen (In re Steffensen)*, 534 B.R. 180, 196 (Bankr. D. Utah 2015) (quoting *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999)).

creditor or trustee meets this initial burden, the burden shifts to the debtor to justify his or her failure to maintain the records.[126]

Further, "[t]here should be some *nexus* between the Debtor's failure to keep records, destruction or loss of records and the creditor's ability to ascertain the debtor's financial condition."[127] Thus, a finding under § 727(a)(3) is two-fold. The creditor first has the burden to establish that the debtor "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his financial condition and *material business* transactions."[128] A debtor's "[r]ecords are adequate if they 'sufficiently identify the transactions that intelligent inquiry can be made respecting them.'"[129] Only then does the burden shift to the debtor to explain or justify the failure to maintain records.[130]

Plaintiffs contend that the absence of any records relating to the List of Sold Assets (e.g., receipts, bills of sale, ads, etc.) is sufficient to deny Debtor's discharge under § 727(a)(3). However, based on the Debtor's testimony, and absent evidence to the contrary, the Court finds that under the circumstances of this case, the List of Sold Assets is an adequate record of the Debtor's sale of personal property for the purposes of § 727(a)(3). Specifically, the List of Sold Assets was sufficient for Plaintiffs and the Trustee to ascertain the Debtor's financial condition, to make an intelligent inquiry as to the Debtor's liquidation of personal property, and to timely take any actions that might be justified under these disclosures. Thus, the Court finds that Plaintiffs have not carried their initial burden of proof.

---

[126] *Lee v. Peeples (In re Peeples)*, 779 Fed. Appx. 561, 566 (10th Cir. 2019) (citation and internal quotation marks omitted).

[127] *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 823 (Bankr. E.D.N.Y. 1996) (emphasis added).

[128] *In re Brown*, 108 F.3d at 1295.

[129] *Martinez v. Sears (In re Sears)*, 557 B.R. 193, 199 (Bankr. D. Colo. 2016) (quoting *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 615 (10th Cir. B.A.P. 2001)).

[130] *In re Brown*, 108 F.3d at 1295.

But even if Plaintiffs had carried their burden, the Court finds the Debtor's explanation for a lack of documentation to be reasonable. Many of the transactions occurred one to three years before the bankruptcy filing, and many were cash sales to unknown individuals found through classified ads.[131] While Plaintiffs argue that the Debtor should have kept detailed documentation because he was a sophisticated businessman, the Debtor testified that he sold the personal property to meet living expenses and not in connection with running a business. Based on the circumstances, the Debtor did his best to detail the facts and circumstances of the sales, including the date and location of the sale, a description of the buyer, and the sale's price. Further, the Trustee did not view these transfers as impacting the estate as he took no action to avoid them. Other than pointing out that the sales were not accompanied by receipts or other contemporaneous documentation, Plaintiffs did not rebut or place in doubt the accuracy or completeness of the List of Sold Assets. Further, they did not establish that the lack of contemporaneous sale records would have had any impact on the administration of the estate. Therefore, under the circumstances of this case, the Court does not find sufficient evidence to deny the Debtor's discharge under § 727(a)(3).

### E.    Section 727(a)(4)(A) (False Oath).

Under § 727(a)(4)(A), the court shall grant a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." To prevail on this cause of action, "a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact."[132] Because the statute requires actual intent, "mere mistake or inadvertence" will not result in the discharge being denied under § 727(a)(4).[133] "The 'materiality' of a false oath is not merely the

---

[131] Trial Tr. 56-57.

[132] *In re Brown*, 108 F.3d at 1294.

[133] *Id.* at 1294-95.

value of omitted assets or detriment to creditors but whether the omission adversely affected the trustee's or creditor's ability to discover other assets, or to fully investigate the debtor's pre-bankruptcy dealings and financial condition."[134]

Plaintiffs contend that the Debtor's discharge should be denied under § 727(a)(4) because the Quiet Title Action and the sale of the Charm Bracelet and Diamond Ring were not disclosed in the Original or Amended SOFA. Plaintiffs assert that this omission from the Amended SOFA was knowing because even after Plaintiffs brought it to the Debtor's attention during his examination in the Illinois Federal Court,[135] it was still omitted from the subsequently filed Amended SOFA.

As described above, the Debtor asserts that he provided all of the relevant Illinois Federal Court documents to his bankruptcy counsel, who must have neglected to include it in his bankruptcy papers. In addition, the Debtor asserts that the extensive amendments to his bankruptcy papers evinces that he was honestly attempting to lay bare his complete financial situation in the bankruptcy case to merit a discharge.[136] As explained above, the inadequacy of counsel defense is often unavailing, but when that counsel is disbarred, denied a bankruptcy discharge, suspended from practice, and even criminally convicted, it supports the Debtor's explanation that the omission in his bankruptcy papers was due to the negligence of his ineffectual counsel.

In short, there is no evidence that the Plaintiffs or the Trustee were unaware of the Debtor's sale of the Charm Bracelet and Diamond Ring, or that the Debtor knowingly and fraudulently

---

[134] *Davis v. Baker (In re Baker)*, Nos. 19-12015, 20-5006, 2021 Bankr. LEXIS 1366, at *21, 2021 WL 2020287, at *9 (Bankr. D. Kan. May 20, 2021) (citing *Davis v. Osborne (In re Osborne)*, 476 B.R. 284, 295 (Bankr. D. Kan. 2012) (quoting 6 COLLIER ¶ 727.04)). *See also Solis v. Asif (In re Asif)*, 455 B.R. 768, 793-95 (Bankr. D. Kan. 2011) (discussing materiality requirement for a false oath); *U.S. Tr. v. Garland (In re Garland)*, 417 B.R. 805, 814-15 (10th Cir. B.A.P. 2009) (same).

[135] *See, e.g.*, Debtor's Ex. G at Robertson 00200-203.

[136] Trial Tr. 65:17-25.

omitted the List of Sold Assets from the Amended SOFA. Therefore, the Court will not deny the Debtor's discharge under § 727(a)(4)(A).

### F.        Section 727(a)(5) (Unexplained Loss of Assets).

Section 727(a)(5) provides that the court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Plaintiff must prove "facts establishing that a loss or shrinkage of assets actually occurred."[137] Once a loss is proven, "the burden then shifts to the debtor to explain the loss or deficiency of assets in a satisfactory manner."[138] "A satisfactory explanation has not been definitively defined, but the debtor probably must explain the losses or deficiencies in such a manner as to convince the court of good faith and businesslike conduct."[139] The Tenth Circuit has held:

> Section 727(a)(5) requires a satisfactory explanation which must consist of more than vague, indefinite and uncorroborated assertions by the debtor. . . . On the other hand, when deciding whether a debtor's explanation is satisfactory for purposes of Section 727(a)(5), the issue is whether the explanation satisfactorily describes what happened to assets; not whether what happened to assets was proper.[140]

Other courts have held that they "are not concerned with the wisdom of a debtor's disposition of assets but, instead, focus on the truth, detail, and completeness of the debtor's explanation of the loss."[141]

---

[137] *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 618 (10th Cir. B.A.P. 2001).

[138] *Id.*

[139] *D'Angelo v. McKean (In re McKean)*, Adv. No. 12-6018, 2014 Bankr. LEXIS 204, at *23-24, 2014 WL 184983, at *7 (Bankr. D. Kan. Jan. 15, 2014).

[140] *Cobra Well Testers, LLC v. Carlson (In re Carlson)*, No. 06-8158, 2008 U.S. App. LEXIS 1521, at *14-15, 2008 WL 8677441, at *5 (10th Cir. Jan. 23, 2008) (citing *Damon v. Chadwick (In re Chadwick)*, 335 B.R. 694, 703 (W.D. Wis. 2005)).

[141] *Structured Asset Servs., LLC v. Self (In re Self)*, 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005) (citing *In re D'Agnese*, 86 F.3d 732, 735 (7th Cir. 1996) (affirming denial of debtor's discharge due to "lack of detail, documentation or proof of disposal of the missing assets")); *see also In re McKean*, 2014 Bankr. LEXIS 204, at *23-24, 2014 WL 184983, at *7.

Plaintiffs assert that because the List of Sold Assets is not accompanied by documentary evidence, the Court should deny the Debtor's discharge. However, the Court finds that the Debtor's testimony, coupled with the List of Sold Assets, is a satisfactory explanation as to the disposition of the Debtor's personal property. The Debtor testified to his various financial and medical setbacks at the time he sold the assets that prevented him from earning an income. These conditions included his criminal conviction and imprisonment, the ban from working in the healthcare industry, serious health problems, and significant legal expenses. In light of his employment challenges, the Debtor explained the need to sell the assets to pay living expenses and legal fees.[142] The Court finds the Debtor's explanation as to the need to sell the assets, the method he used to sell them, and his disclosures of the sales constitute a sufficiently satisfactory explanation to deny the Plaintiffs' claim for relief under § 727(a)(5).

## IV.    CONCLUSION

The Debtor was criminally convicted for filing a false tax return, and he was banned from working in the health care industry. But these misdeeds are not related to Plaintiffs' allegations regarding the Debtor's conduct in this bankruptcy case. Further, they do not create a presumption that the Debtor intended to hinder, delay, or defraud Plaintiffs, creditors, or the Trustee.

On the contrary, the Court found the Debtor's testimony to be credible and consistent with the documentary evidence and his prior statements in the Illinois Federal Court. The Debtor readily conceded potentially problematic facts regarding his prior conduct, the lack of supporting documents regarding the sale of assets, and the omission of the Charm Bracelet and the Diamond Ring in his Statement of Financial Affairs. The Court also notes the amount of effort the Debtors took to fully disclose their financial situation and history in the Statement of Compliance, which

---

[142] Trial Tr. 49.

he previously provided to Plaintiffs in the Illinois Federal Court. The Court also accepts as true the Debtor's testimony that he twice provided this information to his problematic bankruptcy counsel with the intent of making a full disclosure in the bankruptcy case.

In short, the Court cannot find that the Debtor acted with a wrongful intent as to his disclosures or disposition of assets, or that his records or explanations of sold assets were inadequate under the circumstances. Therefore, the Court hereby denies Plaintiffs' causes under §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), and 727(a)(5).



## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Ryan R Bolander     ryan@skclawfirm.com
- Stephen K. Christiansen     steve@skclawfirm.com, jen@skclawfirm.com
- Joshua B. Cutler     josh@skclawfirm.com, jen@skclawfirm.com
- Douglas J. Payne     dpayne@fabianvancott.com, mbeck@fabianvancott.com;mdewitt@fabianvancott.com
- Mark C. Rose     mrose@mbt-law.com, markcroselegal@gmail.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Leighton Aiken
Ferguson Braswell Fraser Kubasta PC
2500 Dallas Parkway
Suite 600
Plano, TX 75093